8805

RAWLS v. AMERICAN CENTRAL INS. CO.

(81 S. E. 505.)

INSURANCE.    FORFEITURE    CLAUSE.    FIXTURES.    MORTGAGES.    RIGHTS    OF
MORTGAGEES AND ASSIGNEE.

1. Within the clause of a fire policy providing for a forfeiture, "if the subject of insurance be personal property, and becomes incumbered by a chattel mortgage," there is no forfeiture because of a mortgage on land, "with all improvements thereon situate," if the insured property on the land is a fixture.

2. Unless the facts are susceptible of but one inference, there is a question of fact as to whether a structure on land is a fixture.

3. The assignment, "For value received, I hereby transfer all my rights and title to the within note and mortgage, * * * without recourse," is sufficient in form to transfer the assignor's interest as mortgagee in the insurance on the mortgaged property.

4. The consideration in an assignment being stated to be "value received," parol evidence is admissible to show the true consideration.

5. A mortgagee's interest being insured, the insurer on paying his claim is entitled to subrogation to the mortgagee's rights under the mortgage.

6. The insurer having canceled the insurance and returned the premium to the owner of the property, without notice to the mortgagee, whose interest was insured, the mortgagee, recovering of the insurer on a loss occurring, is not required to return to the insurer the premium which it returned to the property owner.

---

FOOTNOTE—As to the right of an insurer to subrogation to mortgage on payment of mortgage debt from proceeds of insurance on mortgagee's interest, see note in 3 L. R. A. (N. S.) 79.

7. The complaint merely alleging damage in the sum of $1,000, and praying judgment for that sum, plaintiff cannot recover interest from the time the claim became payable, and so make the recovery more than $1,000.

Before GAGE, J., Aiken, October, 1913.     Affirmed.

Action by W. L. Rawls against the American Central Insurance Company. Judgment for plaintiff, defendant appeals. This is the second appeal in this action, the first appeal being reported in 94 S. C. 299, 77 S. E. 1013, 45 L. R. A. (N. S.) 463.

### EXCEPTIONS.

Defendant's exceptions are:

"1. The Court erred in allowing testimony as to what passed between the agent and Mr. Rawls at the issuance of the policy, on the ground that the policy, in law, expressed the terms of the contract between the parties and such testimony tended to vary its terms.

"2. The Court erred in allowing Mr. Rawls and H. M. Sawyer testify as to assigning or not his claim against the insurance company, over the objection of defendant's counsel, on the ground that the assignment is in writing, and expresses the contract between the parties, and in permitting said witnesses to testify that a claim against the insurance company was reserved, and as to any understanding between said witnesses and H. M. Sawyer, as to reserving such claim against the company, the contract between the parties was varied.

"3. The Court erred in allowing Mr. Rawls to testify in regard to whom and how the premium was paid, on the ground that the policy expresses the terms of the contract, and such testimony tended to vary the same.

"4. The Court erred in permitting Mr. Rawls and H. M. Sawyer to testify that they had a private understanding and arrangement with each other whereby the mortgages could be returned to Mr. Rawls in the event the insurance

company paid up the loss, in order to subrogate the company to his rights.

"5. The Court erred in not granting defendant's motion for a nonsuit at the conclusion of plaintiff's testimony, on the ground that the testimony showed that plaintiff owned no interest whatever in the property, mortgages or insurance policy at the time the action was commenced.

"6. The Court erred in permitting the question and answer to and by Mr. Dan H. Sawyer, as to what the Dicks mortgage covered, on the ground that the mortgage speaks for itself, and the Court should have so held and charged.

"7. The Court erred in not granting defendant's motion for a nonsuit at the conclusion of all the testimony in the case, for the reason that the testimony shows, so that no other inference could be drawn therefrom, that the plaintiff owned no interest in the mortgages or in the policy of insurance, and had no claim against the company at the time the action was commenced; further, that a mortgage existed over the property (the Dicks mortgage) which was unknown and not consented to by the company, and which, according to the clear provisions of the policy, produced a forfeiture.

"8. The Court erred in charging plaintiff's second request, and in not holding that, under the testimony and the law of the case, the assignments covered all of plaintiff's interests, and that it was not a question for a jury, or a question of fact, as to whether plaintiff retained an interest, insurable or otherwise.

"9. The Court erred in charging plaintiff's third request.

"10. The Court erred in charging plaintiff's fifth request, because the claim was not adjudicated or liquidated, but was denied, and cannot bear interest until properly adjudicated; and in modifying defendant's seventh request by adding the words, 'and interest accrued from time of loss.'

"11. The Court erred in charging plaintiff's fifth request, because the Court should have construed the said 'Dicks'

mortgage to be one covering the personal property insured, as it, in fact, did and was intended to do, and should not have left it to the jury to say what sort of a mortgage it was, or whether it covered personal property or not.

"12. The Court erred in charging the plaintiff's eighth and ninth requests, and in not holding that in this case the question was not one to be submitted to the jury; the facts being susceptible of only one inference, and that being against the contention of the plaintiff, and in favor of the contention of the defendant.

"13. The Court erred in modifying defendant's eighth request, and seventh request, and sixth request; in refusing to charge the defendant's ninth, tenth, eleventh and twelfth requests, as follows:

"Ninth request: 'I charge you that the assignment of a mortgage in general terms transfers all of the assignor's rights thereunder. 1 Jones on Mortgages, 829; Burrell on Assignments, 354.'

"Tenth request: 'You are charged that the mortgage by J. J. Jeffcoat to A. F. Dicks, dated December 4, 1909, and containing in its description the following: "With all improvements thereon"—means all of the improvements thereon existing at the time the mortgage was given, which includes the sawmill, planer, lathe, buildings, and any other property there; and, if you find that this mortgage existed on said property at the time of the issuance of the policy, and that Mr. Dan Sawyer, the agent, had no knowledge of the said Dicks mortgage, the existence of said mortgage amounted to a forfeiture of the policy, and the plaintiff cannot recover.'

"Eleventh request: 'You are charged that, if the said Dicks mortgage was concealed from the agent, this amounts to a concealment of a material fact under the policy, and the plaintiff cannot recover.'

"Twelfth request: 'That any alleged agreement, by parol, existing between H. M. Sawyer and W. L. Rawls to

sell back to Rawls the mortgages in question cannot be valid and binding, unless the agreement is to be carried out within a year, and unless the agreement is in writing, or some memorandum made thereof.'

"14. The Court erred in not granting defendant's motion for a new trial based upon the following grounds, which were presented to the Court in presenting said motion:

"(1) The Court erred in admitting testimony as to alleged conversation at the time of the issuance of the policy between Rawls, Jeffcoat, and the agent of the company, in that said testimony tended to contradict and vary the terms of the written contract which was made at that time, and which was in evidence, which ruling was prejudicial to this defendant.

"(2) The Court erred in admitting evidence as to premium being paid indirectly by Rawls, in that said testimony varied the terms of the contract, which was in evidence to this defendant's prejudice.

"(3) The Court erred in permitting plaintiff to introduce testimony tending to show a parol agreement between Rawls and H. M. Sawyer to the effect that he could regain the mortgages at any time by paying said Sawyer the $100 consideration given for the written assignment of the mortgages, the said testimony varying and contradicting the terms of the assignment, and also on the ground that said alleged parol agreement was an unlawful agreement according to law, could not be enforced, and was prejudicial to this defendant in this cause.

"(4) The Court erred in holding that, after plaintiff had assigned his mortgages to H. M. Sawyer, he still had an interest in the insurance contract which amounted to a chose in action, and which was sufficient to support this cause against the defendant; the ruling being prejudicial to this defendant.

"(5) The Court erred in overruling the various other objections interposed by defendant to admission of testimony, as shown by the exceptions in the record noted by defendant's counsel.

"(6) The Court erred in not granting the motion of defendant for a nonsuit on the grounds noted in the record.

"(7) The Court erred in refusing the several requests of the defendant to charge the jury; the same containing sound legal propositions and applicable to the case—this defendant being prejudiced thereby.

"(8) The Court erred, especially, in refusing to construe the 'Dicks' mortgage as contended for by defendant, and in leaving it to the jury to say whether the mortgage pertained to realty or to personalty.

"(9) The Court erred in instructing the jury that it might give a verdict amounting to more than $1,000 stated in the policy of insurance, being interest in amount to over $100 additional.

"(10) The Court erred in not granting defendant's motion for a nonsuit, or in not directing a verdict, at the conclusion of the whole testimony, as requested by defendant.

"(11) In the event the Court determines not to grant a new trial on the grounds above set forth, the defendant asks that the Court direct a reduction from the amount of the verdict of the amount above $1,000; also, the sum of $100 being premium returned by the company when the policy was cancelled, and the sum of $100 obtained by Rawls from H. M. Sawyer, the consideration for the assignment of the said mortgages.

"15. The Court erred in not setting aside the verdict of the jury in the case, on the ground that the testimony showed that the said verdict was against the greater weight of the testimony, and prejudicial to the defendant's interests in this cause."

## Statement of Facts.

This is an action on a policy of fire insurance. On a former appeal herein, the sole question determined was that the plaintiff, as mortgagee, was entitled to notice of cancellation.   94 S. C. 299, 77 S. E. 1013, 45 L. R. A. (N. S.) 463.

The complaint alleges:

"That on the 1st day of July, 1911, upon the application of J. J. Jeffcoat and W. L. Rawl, the defendant company issued to J. J. Jeffcoat and W. L. Rawl its policy of insurance by which it was insured in the sum of $1,000 against loss by fire the following property of the said J. J. Jeffcoat, to wit: $300 on his frame building; $150 on his sawmill; $300 on his planer, and $250 on his turning lathe.

"That each of the above stated items of property was incumbered by mortgages in plaintiff's favor for larger sums than the insurance issued upon each of said items of property.

"That on the 28th day of July, 1911, all the above listed property was totally destroyed by fire, and, as a result thereof, the plaintiff has lost his security upon his mortgages, and has been damaged to the extent of $300 in the loss of the frame building, $150 in the loss of the said sawmill, $300 in the loss of the said planer, and $250 in the loss of the said turning lathe; the remaining property covered by plaintiff's mortgages being totally insufficient to pay them.

"That there was incorporated in said policy, for the express purpose of protecting and insuring this plaintiff as mortgagee, the following clause: 'Loss, if any, payable to Mr. W. L. Rawl, of Batesburg, S. C., as his interest may appear, subject, nevertheless, to all the conditions of this policy.' And in addition thereto said policy provided: 'This policy shall be cancelled at any time, at the request of the insured, or by the company, by giving five days' notice

of such cancellation.' And, further, the said policy pro-
vided: 'If, with the consent of this company, an interest
under this policy should exist in favor of a mortgagee, or
any person or corporation having an interest in the subject
of insurance, other than the interest of the insured as
described herein, the conditions hereinbefore contained
shall apply in the manner expressed in such provisions and
conditions of insurance relating to such interest as shall be
written upon, attached, or appended hereto.'

"That on July 20, 1911, the defendant company notified
J. J. Jeffcoat of its election to cancel the policy, took the
same up from the said Jeffcoat, repaid him the unearned
portion of the premiums, and took a cancellation receipt
therefor, but at the said time gave no notice whatsoever
thereof to this plaintiff, but that only on the day of the fire
a verbal notice of the fact that said attempted and abortive
cancellation had been made was given to the plaintiff. That
he has been damaged by the destruction of the property so
insured in the sum of $1,000."

The defendant's answer to the complaint is as follows:

"For a first defense:

"(1) It denies each and every allegation in said com-
plaint contained, except such as hereinafter specifically
admitted, and demands strict proof thereof.

"For a second defense:

"(1) That, at the time the policy alleged in the com-
plaint was issued, it contained stipulations and conditions
which were a part thereof, as follows: 'This entire policy
shall be void, if the insured has concealed or misrepre-
sented, in writing or otherwise, any material fact or cir-
cumstance concerning this insurance, or the subject thereof,
or if the interest of the insured in the property be not truly
stated therein, or in case of any fraud or false swearing
by the insured touching any matter relating to this insur-
ance, or the subject thereof, whether before or after loss.'

"(2) That, at the time said policy was issued, defendant's agent, Mr. Dan H. Sawyer, asked the insured what incumbrances were over the property covered by the policy, and the insured advised him then and there that there were no incumbrances over the same, except those to the plaintiff, as set out in the policy, and absolutely failed to advise him of other incumbrances that were then over the said property, thereby misrepresenting and concealing material facts and circumstances concerning the subject of the said insurance, but for which the defendant, its agent and servant, would not have issued said policy, and which said misrepresentations and concealments rendered the same null and void, and it was never of force and effect.

"For a third defense:

"(1) That the said policy contained, when issued, the condition, 'if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage, or if any change, other than the death of an insured, take place in the interest, title, or possession of the subject of insurance,' etc., the entire policy, unless otherwise provided by agreement, endorsed thereon, or added thereto, shall be void.

"(2) That at the time said property was insured, there were both real estate mortgages and chattel mortgages over the subject of this insurance, other than the mortgages indorsed upon the policy, to which the defendant never agreed, indorsed upon the policy, nor knew of, and the existence of which rendered said policy void, and the same was never of force and effect.

"For a fourth defense:

"(1) That, under the terms of said policy, and the riders attached thereto, the plaintiff, in the event of loss, can only recover as his interest may appear.

"(2) That, if the plaintiff ever had an interest in the subject of said insurance, it was only as mortgagee, and he has since the insurance of the same sold his mortgages, and

14—97

no longer has any interest whatever in the property, and has no claim against this defendant for damages, either in law or equity.

"For a fifth defense:

"(1) That, if the plaintiff is entitled to recover under said policy, as alleged in the complaint, upon the payment to him of damages provided by said policy, this defendant would be subrogated to all of the rights, privileges and interests held by the plaintiff under the mortgages through which he claims an interest in the subject hereof at the time of the fire.

"For a sixth defense:

"(1) That, when this defendant, its agent and servant, canceled and took up the policy herein, it returned to J. J. Jeffcoat, the insured, the premium he had paid, $100, and that, if the plaintiff is entitled to recover, as alleged in his complaint, this defendant should be allowed to deduct the amount of the premium so returned from the amount for which it is liable under said policy. Wherefore the defendant demands that the complaint be dismissed with costs."

*Messrs. Gunter & Gyles,* for appellant, cite: *Plaintiff parted with all interest under policy upon assignment of note and mortgage to his assignee:* 27 Cyc. 1296-9; 1307, 1315; 6 Rich. Eq. 302; 60 Am. St. Rep. 322; 52 Me. 128; 27 Cyc. 1308, 1318; 14 S. C. 66; Jones Mtges. pp. 420 & 691, secs. 322 & 829; 5 S. C. 346; 10 Rich. Eq. 582; 83 Am. Dec. 296; 2 Cyc. 1087; 9 Wend. 80; 4 Johns. 41; 85 Ala. 80; 9 Cowen 747; 17 How. (U. S.) 612; 11 Am. Dec. 417; 64 *Ib.* 551; 100 *Ib.* 469; 1 Wheaton 279; 6 Am. Rep. 82; 50 Am. Rep. 475; 11 Rich. 432; 4 S. C. 23; 2 May Ins., p. 1040, sec. 456; 4 Cyc. 68; 138 Mass. 11; 4 Cyc. 74, 85; 32 S. C. 215; 32 Ill. 221; 107 Mass. 377; 77 S. C. 191, 229. *Insurer subrogated to rights of mortgagee:* 76 S. C. 101; 36 S. C. 267; 76 S. C. 101. *Admissibility of evidence as to property covered by mortgage:* 42

S. C. 66; 93 Ill. 415; 27 Cyc. 1093; Jones on Ev., sec. 175. *Construction to be made by the Court:* 31 S. C. 398; 32 S. C. 123; 34 S. C. 217. *Fixtures:* 51 S. C. 29; 3 Words & Phrases 2841. *Relief to be granted limited by prayer of complaint:* 77 S. C. 107; 23 Cyc. 796; 19 S. C. 499; 37 S. C. 157.

*Messrs. Hendersons,* for respondent, cite: *As to effect of assigning the mortgages:* Richards Ins., secs. 44 and 45; 268; 19 Cyc. 591; 13 A. & E. Enc. of L. 138, 199; 80 Am. Dec. 578; 21 Enc., p. 1093. *Right of subrogation does not impair rights of mortgagee to collect his debt in full:* Richards Ins., sec. 53; 37 Cyc. 379; 51 Am. St. Rep. 766; 1 Leading Cas. Eq. 120; 6 Watts 221; 10 Watts 148; 52 Pa. St. 522; 19 Weekly Notes Cases (Pa.) 78; 112 Fed. 203; 17 Am. St. Rep. 102; 103 U. S. 25. *Construction of clause as to forfeiture; real estate mortgage:* 39 Atl. 868; 56 N. J. Eq. 309; 35 Ky. (5 Dana) 542, 547; 67 Pa. (17 P. Smith) 512-19; 28 Atl. 180, 181; 159 Pa. 388; 31 N. C. 91, 93; 81 Mo. 264, 270; 45 Mo. 100, 102. *Inclusion of interest in verdict:* 19 Cyc. 971; 13 Enc. 370; 16 Am. Dec. 322; 27 Am. St. Rep. 708; 3 Fed. 197. *Prayer no part of complaint:* 85 S. C. 192.

April 21, 1914.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

We will first discuss the defenses in regular order.

(The first defense is a mere denial.)

Second defense: The only testimony introduced to sustain this defense was to the effect that J. J. Jeffcoat executed a mortgage in favor of A. F. Dicks, dated 4th December, 1909, on the lot of land described in the complaint, and that the defendant had no notice of said mortgage at the time the policy was issued.

His Honor, the presiding Judge, upon the request of the defendant, charged the jury as follows: "That if you find that Mr. Jeffcoat concealed or misrepresented any material fact or circumstance concerning the insurance, or the subject thereof, then Mr. Rawl is bound by such concealment or misrepresentation, and he cannot recover from the company."

It will thus be seen that the verdict of the jury disposed of this defense.

Third defense: The mortgage in favor of A. D. Dicks covered the said land, "with all improvements thereon situate."

His Honor, the Circuit Judge, charged the sixth and eighth requests of the plaintiff, which were as follows:

"(6) The jury is charged that the forfeiture clause in the policy, which has been introduced in evidence, based upon the existence of mortgages upon insured property, provides for a forfeiture, 'if the subject of insurance be personal property, and be or becomes incumbered by a chattel mortgage.' The jury is charged that under this forfeiture clause that the existence of a real estate mortgage upon the property does not of itself work a forfeiture of the insurance."

"(8) If the jury finds that the articles in question savor of realty, being guided by all the testimony that they have heard upon the witness stand, and were incumbered by a real estate mortgage, then the jury is charged that the existence of said real estate mortgage does not work a forfeiture of the policy of insurance."

The question whether the words "all improvements thereon situate" embraced the property covered by the mortgage executed by Jeffcoat in favor of the plaintiff depended upon the fact whether it was to be regarded as real or personal property.

In the case of *Padgett* v. *Cleveland,* 33 S. C. 339, 11 S. E. 1069, this Court recognized the following as a correct

definition of a fixture: "A fixture is an article which was a chattel, but, by being physically annexed to the realty by one having an interest in the soil, becomes a part and parcel of it." Mr. Justice McGowan, who delivered the opinion of the Court in that case, uses this language: "We think * * * the general statement may be safely made that in the later cases there has been a decided relaxation as to the original rule of the common law * * * governing the freehold, and that this modern relaxation has been effected chiefly in favor of trade. * * * Besides this confusion in the law * * * and whether an article of personal property has been so annexed to the soil as to make it a permanent fixture, and as such not movable, is always a mixed question of law and fact."

In *Hughes* v. *Shingle Co.,* 51 S. C. 1, 28 S. E. 2, the Court quotes with approval the following statement of the rule: "Where a structure is placed upon land, not to promote the convenient use of the land, but to be used for some temporary purpose, external to the land, and the land is used only as a foundation, because some foundation is necessary for the business, then the structure and its belongings are not fixtures."

These authorities are quoted with approval in the case of *Hurst* v. *Craig Furniture Co.,* 95 S. C. 221, 78 S. E. 960, which concludes as follows: "The great confusion in regard to the law of fixtures has arisen from the effort to construe that as a fixture in one case because it was so regarded in other cases. A fixture involves a mixed question of law and fact. It is incumbent on the Court to define a fixture; but whether it is such in a particular instance depends upon the facts of that case, unless the facts are susceptible of but one inference. In modern times the question whether the article is to be regarded as a fixture depends generally upon the intention of the parties in the particular case."

These cases show that the question whether the articles described in the Dicks mortgage were to be regarded as real or personal property was properly submitted to the jury.

Fourth defense: The proposition for which the appellant's attorneys contend is thus stated in their argument: "That when Rawl, · the mortgagee, assigned by absolute assignment, without recourse, his interest in the 3, 4 notes and mortgages to H. M. Sawyer, he parted with all his interests, if he had any interest at all, or claim against the insurance company, and that any such interest, thereby became extinguished."

The first question that will be considered is whether the assignment upon its face, or in the absence of other testimony, was sufficient to transfer to the assignee the claim of the plaintiff, which arose under the policy of insurance.

The rule is thus stated in 27 Cyc. 1298, 1299: "A formal and valid assignment of a mortgage and debt which it secures will generally invest the assignee with all the rights, powers and equities possessed by the mortgagee, including the benefit of any collateral undertaking, obligations, or security, which constitutes a part of the mortgage security, any covenant to pay the mortgage debt, any right which the mortgagees may have as to receiving the rents and profits, any benefit from existing insurance, or the proceeds of the policies; as also the benefit of any entry or possession on the part of the mortgagee any right or priority possessed by the mortgagee and the right in equity to have it reformed by the correction of a mistake or omission.

The general principle is thus announced in 2 Enc. of Law 1084: "By a complete assignment of a chose in action, the whole interest of the assignor, in the thing assigned, passes to the assignee, and also the security for the debt, for it is a familiar and well settled rule of law that the assignment of a debt carries with it every remedy and security for such debt available by the assignor as

incident thereto, although they are not specially named in the instrument of assignment.".

This doctrine is recognized by the other cases cited in the argument of the appellant's attorneys, including the following cases from this State: *Wright* v. *Eaves,* 10 Rich. Eq. 382; *Muller* v. *Wadlington,* 5 S. C. 342; *Lynch* v. *Hancock,* 14 S. C. 66; *Wilson & Co.* v. *Dean,* 21 S. C. 327. These authorities show that the assignment was sufficient in form to transfer the insurance claim to the assignee, and that it was not thereby extinguished.

The next question that will be determined is whether the consideration upon which the assignment was made could be shown by parol testimony.

The form of the assignments was as follows: "For value received, I hereby transfer all of my rights and title to the within note and mortgage, * * * without recourse."

It will be observed that the only consideration stated in the assignment was "for value received."

"The rule that the written agreement is conclusively presumed to contain the whole contract, and that it cannot be shown by parol that other things were agreed on at the same time, is not applicable to instruments which, from their very nature, do not purport to state the entire agreement in respect to the subject matter, but are adapted merely to transfer title in execution of an agreement which they do not profess to show. Of this class of instruments are assignments of choses in action, bills of sale. * * *" 21 Ency. of Law 1093.

The following cases in this State show that, when the consideration is stated to be for "value received," or the writing does not purport to state the consideration in full, parol evidence is admissible to show the true consideration. *McGrath & Byrum* v. *Barnes,* 13 S. C. 328, 36 Am. Rep. 687; *Chemical Co.* v. *Moore,* 61 S. C. 166, 39 S. E. 346; *Williams* v. *Salmond,* 79 S. C. 459, 61 S. E. 79; *Holliday* v. *Pegram,* 89 S. C. 73, 71 S. E. 367, Ann. Cas. 1913A, 33.

Fifth defense: There is no doubt as to the proposition contained in this defense; but the right of subrogation does not arise until the claim is paid.    The plaintiff does not dispute this right, nor was it in his power to deprive the defendant thereof, when the notes and mortgages were assigned.    It is a right that arises by operation of law, and any one to whom property is assigned takes it subject to the right of subrogation, if the property in the hands of the assignor would have been subject to such right.

Sixth defense: In regard to this proposition, it is only necessary to say that the policy was not canceled as to the plaintiff, and, if the defendant did not see fit to give him proper notice of cancellation, there is no just reason why he should be required to return the unearned premium, paid to Jeffcoat.

The foregoing are the only defenses upon which the defendant relied.

These conclusions practically dispose of all questions properly before the Court for consideration, except one, to wit: Was there error on the part of his Honor, the presiding Judge, in charging the jury that they could find a verdict for the interest?

The policy provides that the insurance shall not fall due until the expiration of 60 days after the filing of proper proofs of loss.    The jury, under a charge of the Circuit Judge, rendered a verdict in favor of the plaintiff for $1,130.66, which included interest after the expiration of 60 days from the time of filing proofs of loss.

The complaint alleges that the plaintiff "has been damaged by the destruction of the property so insured in the sum of $1,000, and the prayer is for judgment for the sum of $1,000 and the costs and disbursements of the action.

The case of *Straub* v. *Screven,* 19 S. C. 445, shows that the plaintiff could not recover a larger amount than

that for which he demanded judgment, and therefore that the ruling was erroneous.

As the amount of interest allowed is certain, it will not be necessary to remand the case for a new trial, unless the plaintiff should refuse to remit the interest.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, unless the plaintiff shall remit upon the record the amount included as interest within 10 days after the remittitur shall have gone down, but that, if said amount is remitted, the judgment shall stand affirmed.

MR. JUSTICE FRASER, *dissenting*. I cannot concur. When Rawl assigned the notes and mortgages, he assigned his interest in the policy. The Rawl interest went to Sawyer, along with the notes and mortgages. I do not see how Rawl can recover on the policy any more than he can recover on the notes and mortgages.

MR. JUSTICE GAGE did not sit in this case.