**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Plaintiff,**

v.

**George F. MULLER, Defendant.**

**Civ. A. No. 68-498.**

United States District Court
D. South Carolina,
Columbia Division.

Nov. 27, 1968.

E. W. Mullins, Claude M. Scarborough, Jr., Columbia, S. C., for plaintiff.

R. B. Herbert, R. B. Herbert, Jr., Columbia, S. C., for defendant.

## OPINION and ORDER

DONALD RUSSELL, District Judge.

This action involves the right of the grantee of an easement, upon abandonment of the easement, to remove from the servient premises equipment installed incident to the enjoyment of the easement. It arises out of a grant by deed to the plaintiff of an easement to erect and maintain telephone lines across the properties of the defendant's predecessor in title. Plaintiff constructed such lines across the servient estate under the terms of the easement deed. It is now abandoning such line and seeks to remove the poles and transmission wires installed by it across the servient estate. The defendant, who is the present owner of the servient tenement, denies such right, contending that the transmission line, when erected, became a fixture and part of the real estate, which, upon abandonment of the easement, the grantee of the easement could not remove from the realty.

The jurisdiction of this Court rests on the admitted diversity of citizenship between the plaintiff and the defendant. The value of the property in question, primarily the copper wire attached to the poles, is in excess of $10,000. Moreover, the land involved in the easement is located in this District. Jurisdiction of this controversy accordingly exists and the right of the parties to a declaratory judgment on their respective claims is properly invoked.

There is no factual dispute between the parties. The issue is a purely legal one, to be resolved by the Court solely by a

construction of the easement deed.[1] I am of the opinion that plaintiff is entitled to judgment.

■■■ The general rule seems to be that the grantee of an easement, upon abandonment of the easement, has the right to remove the equipment and structures installed in connection with the exercise of its easement rights. Clements v. Philadelphia Co. (1898) 184 Pa. 28, 38 A. 1090, 39 L.R.A. 532.[2] The defendant concedes this principle in the case of easement rights acquired through condemnation under the right of eminent domain but would deny its applicability to easements acquired by deed. He suggests no rational basis for such distinction. The rights given the plaintiff under its deed are as broad as those it might have acquired had it resorted to condemnation. Since the easement grantee's rights are similar, whether acquired by deed or condemnation, it would seem its rights, upon abandonment, should be similar.

■■ The contention that equipment and structures placed on the servient tenement by the easement grantee herein became fixtures and part of the realty, which, upon abandonment of the easement, must remain with the owner of the land, is not, in my judgment, tenable. Generally, the tests for determining whether a particular addition is a fixture are (1) annexation to the realty, actual or constructive, (2) adaptation to the use to which the realty is devoted and (3) intention that the object become a permanent accession to the freehold. W. G. Grace & Co. v. Charleston Lighterage & Transfer Co. (D.C.S.C.1951) 95 F.Supp. 249, 250. The modern authorities, however, increasingly are assimilating all these factors into the controlling issue of intention and consider annexation and adaptation as indications of intention. National Bank of Republic of Chicago v. Wells-Jackson Corp. (1934) 358 Ill. 356, 193 N.E. 215, 218, 98 A.L.R. 618; Firth Co. v. South Carolina Loan & Trust Co. (C.C.A. 4, 1903) 122 F. 569, 579; 35 Am. Juris.2d pp. 710–1.

■■ But, as the Court aptly remarked in Readfield Tel. & Tel. Co. v. Cyr (1901) 95 Me. 287, 49 A. 1047, 1048, it is not "the secret or hidden intention" of the parties to the annexation which governs "but the intention which the law deduces from such external facts as the structures and mode of attachment, the purposes and use for which the annexation has been made, and the relation and situation of the party making it." [3] Thus, the law makes quite a distinction between those situations where the annexation is made by the owner of the fee and that made by one having merely a license or easement right, limited either in time or use. The rule favors fixtures where the addition is made by one claiming fee simple title; no such presumption arises where the one making the addition has an estate, limited in time or use.[4]

1. Ordinarily, the issue posed herein is one for resolution by a jury. However, both parties plant their rights on the easement deed itself. The issue is thus one of law, involving as indicated a construction of the easement deed which follows the usual form in such cases and includes no unusual phrases. See, Hurst v. J. D. Craig Furniture Co. (1913) 95 S.C. 221, 229, 78 S.E. 960.

2. It seems clear that the grantee has a reasonable time after abandonment within which to exercise the right of removal. Saye v. Hill (1914) 100 S.C. 21, 25, 84 S.E. 307; Planter's Bank v. Lummus Cotton Gin Co. (1925) 132 S.C. 16, 27, 128 S.E. 876, 41 A.L.R. 592.

3. To the same effect is the language of Mr. Justice Cothran in Planter's Bank v. Lummus Cotton Gin Co. (1925) 132 S.C. 16, 23, 128 S.E. 876, 879, 41 A.L.R. 592: "this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made."

4. See, Planter's Bank Case, *supra* (p. 22, 132 S.C. p. 878, 128 S.E.): "In Montague v. Dent, 10 Rich.Law 135, 67 Am.Dec. 572, 573, the Court says: " 'So various are the considerations which enter into the interpretation of the

In their quest for intention, the modern cases lay greatest stress on the character of the annexed property "as related to the uses to which the land has been appropriated; it being regarded as a fixture only in case there is a correspondence between its character, and consequently its prospective use, and the use to which the land is devoted." Planter's Bank v. Lummus Cotton Gin Co., *supra*, at p. 24, 132 S.C., at p. 879, 128 S.E. Gilbert v. Easterling (1950) 217 S.C. 267, 276, 60 S.E.2d 595, is an apt illustration of this "use factor" as evidence of intention. In holding that a building erected on realty did not become a fixture, the Court there said "that the building was never constructed as incidental to the operation of the mortgaged premises for agricultural purposes". Again, in Carroll v. Britt (1955) 227 S.C. 9, 18, 86 S.E.2d 612, in resolving whether certain houses erected on the premises were fixtures and part of the realty, the Court emphasized that the first question to be considered was whether they were designed for "the enjoyment of the premises". See, also, Saye v. Hill (1911) 100 S.C. 21, 84 S.E. 307 to the same effect.

City of Greenville v. Washington American League Baseball Club (1945) 205 S.C. 495, 32 S.E.2d 777, represents the converse of Gilbert v. Easterling, *supra*, and Saye v. Hill, *supra*. In the *City of Greenville Case, supra*, the structures placed on the property were intended for its convenient use in carrying out the dedicated purpose as a recreational facility. Accordingly, the Court held (205 S.C. at p. 514, 32 S.E.2d at p. 784):

"In this case, the inference is inescapable that the improvements placed upon the selected baseball site were erected there to promote and establish the convenient use of that particular site, for the playing of professional baseball. The land was not used simply as a foundation because some foundation was necessary for the business. *What was done there was not in any sense external to the land,* and the conclusion would follow that the structures and improvements placed thereon did become fixtures, in the absence of any agreement to the contrary." (Italics added.)

Undoubtedly, the clearest statement of the "use factor" rule, as applied in this jurisdiction, appears in Evans v. McLucas (1880) 15 S.C. 67, 70:

"As a general rule, all things that are annexed to the land become a part of it, but to this there are exceptions, as where there is a manifest intention to use the alleged fixtures in some employment distinct from that of the occupier of real estate, or where the chattel has been annexed for the purpose of carrying on trade, it is not, in general, considered as part of the realty. In modern times, for the encouragement of trade, many things are now considered as personal property which seem to be attached to the freehold. This is particularly true as between landlord and tenant for years. The tenant may take away chimney pieces or a cider mill and press or pump erected by him on the land. It is well settled under the American decisions that this exception (as to fixtures) extends to houses and other structures of a permanent character, and that they may retain their character of personal property and be the subject of a distinct and independent ownership as chattels, apart from any title, in the soil on which they are erected. Carliss [Curtiss] v. Hoyt, 19

law fixtures, dictating varying and opposite conclusions as to the same or like articles, which may become the subject of controversy, that an adjudicated case may fail to be of any authority, where the subject-matter of contest may be the same, *as the particular case must be considered with reference to the relation of parties.* * * *'

"The various relations under which the question arises may be roughly divided into two classes: (1) Where the subject-matter of the controversy has been placed upon the premises by the owner of the fee-simple title; (2) where it has been so placed by one owning an estate less than a fee simple. * * *"

Conn. 154; 2 Kent 343; 2 Bouv.Inst. 163; [Fairis v. Walker] 1 Bail[ey] 540; 2 Am.Lead.Cas. 747, and authorities cited. For the purposes of this case the owner of the fee may be considered as the landlord, and the railroad company in a position analogous to that of tenant for years, having the right to erect buildings, such as depots connected with their business, without making them fixtures for the benefit of the landowner. The railroad company having a dominant easement in the soil, erected or consented to have erected upon it a warehouse to facilitate their business as an assistant depot. The owner of the soil has no right to this building, and those who built it might, without damaging the land-owner, remove it at any time if it could be done in such way as not to injure the land itself."

■ Under these authorities, it seems clear that the poles and wires strung thereon by the plaintiff are not fixtures. They were placed on the property under the easement granted by defendant's predecessor in title. They are used "in some employment distinct from that of the occupation of the real estate." Unlike the structures in the *City of Greenville, supra,* the poles and telephone wires are in no way incidental to the convenient enjoyment or use of their properties by the defendant; in fact, they are alien to, and interfere with such use and enjoyment. Their removal will not diminish the value of the realty; on the contrary, it must be assumed their removal will increase the value of the real estate by eliminating an unsightly object therefrom.

The defendant sees some special significance in the fact that the use of the telephone lines was to be permanent, rather than for a fixed, limited period of time. It perhaps would be more accurate to describe the use as indeterminate rather than permanent, since it must always be assumed that changes will occur in any industry that may render any installation obsolete. I do not, however, regard the permanent, as distinguished from temporary, nature of the installation important. While some of the cases refer to the fact that the installations involved in those cases were temporary (i. e., Hughes v. Edisto Cypress Shingle Co. (1897) 51 S.C. 1, 28 S.E. 2), the decision in such cases did not turn on that fact. Actually, a number of the cases in which there was a denial of the character of a fixture, the installation involved was of a permanent nature. See, Gilbert v. Easterling, *supra;* Evans v. McLucas, *supra.* It is not the permanency that fixes the character of the installation. The Court made this clear in Saye v. Hill (1911) 100 S.C. 21, 27, 84 S.E. 307, 308 where it remarked that, "Houses are frequently built and expensive machinery installed therein with every appearance of permanency", which never become fixtures and a part of the realty. The important factors are (1) that the rights of the party making the installation are limited, sometimes in time as in Hurst v. J. D. Craig Furniture Co., *supra,* and sometimes in use as in Evans v. McLucas, *supra,* and (2) that the installation is in no way incidental to the normal use of the land by the fee simple owner. Both of these factors, as I have observed, rule out the structures involved herein as fixtures which become a part of the realty.

Let judgment be entered for the plaintiff.

And it is so ordered.